# EXHIBIT 1

# COMMERCIAL FLAT RATE NOTE WITH BALLOON PAYMENT

**Lender Name:** HARD MONEY PA LLC c/o HMB Servicing, LLC
**Lender Address:** 10015 Old Columbia Rd., Suite H-125, Columbia, Maryland 21046
**Borrower Name:** PROSPERITY PARTNERS, INC.
**Borrower Address:** ℅ MATTIAS CHE BAMA, 5368 Dunteachin Drive, Ellicott City, MD 21043
**Interest Rate:** 12.99%
**Principal Amount:** $75,000.00
**Loan Term:** 12 Months
**Funding Date:** May 22, 2023
**Maturity Date:** June 1, 2024
**Loan Number:** ███████████

FOR VALUE RECEIVED, the undersigned Borrower(s), Maker(s) and/or Guarantor(s) (hereinafter collectively the "Borrower") promises to pay **HARD MONEY PA LLC c/o HMB Servicing, LLC** (hereinafter referred to as the "Holder" or "Lender"), at the address above, the principal sum of **SEVENTY FIVE THOUSAND and 00/100 Dollars ($75,000.00)** ("Principal Balance"), together with interest from the above date at the interest rate of **12.99% Percent** per annum on all sums advance to Borrower by Lender including, but not limited to, the unpaid Principal Balance, as well as any future advances made to Borrower ("Advances"), until paid. This is not a revolving loan and any amounts repaid or prepaid are not available for re-advance to the Borrower. This Note has a default rate as outlined hereinbelow. Interest shall be due on the entire amount of the Principal Balance commencing on the date of this Note, regardless of whether any part of the Principal Balance is withheld by Lender in a construction reserve, advance interest reserve, or otherwise. Interest shall be paid in arrears. The principal of this Note, plus accrued interest at the rate aforesaid, shall be due and payable as follows:

    a.    One (1) payment of interest only in the amount of **$811.88** on the date hereof;

    b.    Eleven (11) equal and consecutive Interest only payments in the amount of **$811.88**, beginning on or before **August 1, 2023** and continuing each and every month thereafter; and

    c.    One (1) final balloon payment on or before **June 1, 2024**, at which time, unless sooner paid, the entire principal balance, together with accrued but unpaid interest thereon, and any costs, fees, premiums and expenses due under this Note or any other loan documents, shall be due and payable ("Maturity Date").

    1.    **Application of Payments.** All payments on this Note shall be made in lawful money of the United States of America and shall be applied first to any late charges and other fees, costs or charges provided for herein, all at the sole and absolute discretion of Lender, second to the payment of accrued but unpaid interest and the remainder to the reduction of principal. The Borrower shall make all payments when due, without set-offs of any nature. Any accrued interest remaining past due for 30 days or more shall automatically and without notice to Borrower be added to and become part of the unpaid Principal Balance and shall bear interest at the rate or rates specified in this Note, and any reference herein to "accrued interest" shall refer to accrued interest which has not become part of the unpaid Principal Balance.

    2.    **Late Charge/Dishonored Check.** There shall be a grace period of five (5) days for any payment due under this Note. The Borrower shall pay a late charge of 10% of the delinquent payment amount, or $50.00, whichever is greater, plus the cost and expenses incurred in collecting the delinquent amount, if such payment is received by Lender after the grace period. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any pre-authorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $50.00 (but not more than the maximum amount allowed by law) for each such event.

    3.    **Security.** To secure the payment and performance of obligations incurred under this Note, this Note shall be secured by and subject to the terms of one or more of the following, all of which are dated the same date hereof: (a) a Deed of Trust from the Borrower which encumbers real property and improvements located at **7755 & 7757 Belle Point Drive, Greenbelt, MD 20770** (the "Property"); (b) an Unconditional and Continuing Guaranty Agreement from **MATTIAS CHE BAMA and CELESTIN NYA** for the benefit of the Lender (the "Guaranty"); (c) UCC Financing Statements filed in the appropriate registry as Lender deems appropriate; and (d) other documents, affidavits, agreements and/or written instruments between Borrower, Guarantor and/or Lender related to this Note. All of the above referenced documents shall be collectively referred to as the "Security Documents."

All of the terms, covenants, provisions, conditions, stipulations, promises and agreements contained in the Security Documents and/or any other documents related to this Note to be kept, observed and performed by the Borrower are hereby made a part of this Note and are incorporated herein by reference to the same extent and with the same force and effect as if they were fully set forth herein, and the Borrower promises and agrees to keep, observe and perform them, or cause them to be kept, observed and performed, strictly in accordance with the terms and provisions thereof, and the maturity hereof is subject to acceleration as therein set forth. Both this Note and the Security Documents are given in consideration of a loan of even date herewith in the amount of the principal sum by the Lender to the Borrower.

In addition to any real or personal property described herein, Borrower grants Lender a security interest in all of Borrower's right, title and interest in all monies and instruments of Borrower that are now or in the future in Lender's custody or control.

4. **Events of Default.** An Event of Default will occur under this Note in the event that Borrower, any guarantor or any other third party pledging collateral to secure this Note:

    a. Fails to make any payment of principal and/or interest or any other sum due hereunder when the same is due pursuant to the terms of this Note;

    b. Makes an assignment for the benefit of creditors, or admits in writing of being unable to pay his/her/its debts as they become due, or files a petition in bankruptcy, or be adjudicated a bankrupt or insolvent, or files a petition seeking any arrangement, composition, readjustment or similar relief under any present or future statute, law or regulation, or files an answer admitting or not contesting the material allegations of a petition filed against him/her/it in any such proceeding, or seeks or consents to or acquiesces in the appointment of any trustee or receiver;

    c. Fails to perform or violates any obligations or covenants under the terms of this Note or any Security Documents or any other present or future written agreements regarding this Note or any other indebtedness or obligations between Borrower, guarantor or such third party and Lender, related to this Property or any other property;

    d. Defaults under the terms of any note, deed of trust, mortgage, security instrument, or any other loan documents or written agreements for any other loans secured by the Property;

    e. Sells or otherwise conveys any property which constitutes security or collateral for the payment of this Note without the prior written consent of the Lender and/or the destruction, loss or damage to such collateral in any material respect and/or the seizure, condemnation or confiscation of the collateral;

    f. Provides or causes to be provided any false or misleading signature or representation to be provided to Lender;

    g. Permits the entry of or has any type of garnishment, judgment, tax levy, attachment or lien issued, entered or served against him/her/them/it, or against any property being pledged as collateral for this Note or any other property of such Borrower, guarantor or third party;

    h. Dies, becomes legally incompetent, is dissolved or terminated, or ceases to operate its business;

    i. Fails to provide Lender evidence of satisfactory financial condition;

    j. Has a majority of its outstanding voting securities sold, transferred or conveyed to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Note;

    k. Causes Lender to deem itself insecure due to a significant decline in the value of any real or personal property securing payment of this Note, or Lender, in good faith believes the prospect of payment or performance is impaired;

    l. Fails to keep an insurance policy in place on the Property naming Lender as the mortgagee and/or as the loss payee including its successor and/or assigns;

    m. Fails to keep property taxes current on property used as security for this Note.

5. **Rights of Lender On Event of Default.** In the Event of Default as set forth herein, or in the event of the breach of any covenant or obligation contained in the herein referred to Deed of Trust or the Security Documents on the part of the undersigned to be kept, observed or performed, the Lender, at its sole and absolute discretion, may exercise one or more of the following remedies without notice or demand (except as required by law):

    a. Declare the entire unpaid balance of principal of this Note, along with accrued and unpaid interest thereon and all other charges, costs and expenses, provided for herein and in the Security Documents immediately due and payable. Such acceleration shall be automatic and immediate in the Event of Default is a filing under the Bankruptcy Code;

    b. Collect the outstanding obligations of Borrower with or without judicial process;

    c. Cease making advances under this Note or any other agreement between Borrower and Lender;

    d. Take possession of any property used as collateral for this Note in any manner permitted by law;

    e. Require Borrower to deliver and make available to Lender any property used as collateral for this Note at a place reasonably convenient to Borrower and Lender;

    f. Sell, lease or otherwise dispose of any property used as collateral for this Note and collect any deficiency balance with or without resorting to legal process;

    g. Assume any and all mortgages/deeds of trust in existence at the time of default on all property/collateral securing loans made to Borrower;

    h. Set-off Borrower's obligations against any amounts due to Borrower including, but not limited to, monies and instruments, maintained with Lender; and

    i. Exercise all other rights available to Lender under any other written agreement or applicable law.

Immediately upon the occurrence of an Event of Default and without notice to Borrower or any other party, the unpaid Principal Balance and all accrued and unpaid interest (including all accrued and unpaid interest made part of the Principal Balance as set forth herein) shall bear interest at the "Default Rate" set forth in this Note, and shall continue to bear interest at the Default Rate until and including the date on which all amounts due under this Note are paid in full. Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Furthermore, if payment on this Note is stayed or suspended under any proceeding pursuant to the United States Bankruptcy Code, or any other bankruptcy or insolvency proceeding, the interest on this Note shall continue to accrue between the time of the filing of the bankruptcy/insolvency petition/proceeding and approval of any Bankruptcy/Insolvency Plan. Borrower shall make all payments of principal and interest under this Note without relief from valuation and appraisement laws.

Lender may, in Lender's sole and absolute discretion, agree to reinstate this Note after this Note has been accelerated, but is not obligated to do so. If Lender agrees to reinstate this Note, then in addition to any other amounts (including but not limited to default interest, fees, costs and expenses), Borrower agrees to pay a reinstatement fee ("Reinstatement Fee") equal to Ten Percent (10%) of the then outstanding unpaid principal balance of the Note. The calculation of such Reinstatement Fee shall be made without regard to any escrows or reserves held by Lender pursuant to any documents or agreements related to this Note.

Lender's remedies in this Section are in addition to any available at common law and nothing in this Section shall impair any right which the Lender has under this Note, or at law or in equity, to accelerate the debt on the occurrence of any other Event of Default, whether or not relating to this Note. Lender's rights or remedies as provided in this Note shall be cumulative and concurrent and may be pursued singly, successively, or together against Borrower or any guarantor or third party (without first having to proceed against Borrower), at Lender's sole and absolute discretion. Borrower shall pay to Lender on Lender's demand the amount of all expenses incurred by Lender (a) in enforcing it's rights under this Note, or (b) as the result of a default by Borrower under this Note, including but not limited to the cost of collecting any amount owed hereunder, and any reasonable attorney's fees. The failure by Lender to exercise any of its options contained herein shall not constitute a waiver of the right to exercise such option in the event of any subsequent default.

6. **Costs and Expenses.** To the extent permitted by law, Borrower agrees to pay any and all reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Note, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions. Said collection fees shall be in the minimum amount of 15% of the amount of the judgment as collected (or, if collected without judgment, a minimum fee of 15% of the amount collected), which attorney's fee shall not be diminished by any other fees, costs or damages, but in no event shall the attorney's fees be less than $3,000.00.

7. **Extensions.** The Borrower shall remain liable for the payment of all amounts due under this Note notwithstanding any extension or extensions of time of payment or any indulgence of any kind or nature that the Lender may grant or permit any subsequent owner of the encumbered property, whether with or without notice to the Borrower and the Borrower hereby expressly waives such notice.

8. **Confessed Judgment.** UPON ANY DEFAULT BY THE BORROWER AS SET FORTH IN THIS NOTE, AND TO THE EXTENT PERMITTED BY LAW, THE BORROWER HEREBY DULY CONSTITUTES AND APPOINTS ANY DULY LICENSED ATTORNEY TO APPEAR AND WAIVE THE ISSUANCE AND SERVICE OF PROCESS AND CONFESS A JUDGMENT AGAINST THE BORROWER IN ANY COURT OF COMPETENT JURISDICTION IN THE STATE OF MARYLAND IN FAVOR OF THE HOLDER OF THIS PROMISSORY NOTE IN THE FULL AMOUNT DUE ON THIS PROMISSORY NOTE (INCLUDING PRINCIPAL, ACCRUED INTEREST AND ANY AND ALL PENALTIES, FEES AND COSTS) PLUS COURT COSTS AND ATTORNEY FEES IN THE MINIMUM AMOUNT OF FIFTEEN PERCENT (15%) OF THE UNPAID BALANCE OF PRINCIPAL, INTEREST, PENALTIES, OR OTHER SUMS DUE HEREUNDER (BUT IN NO EVENT SHALL ATTORNEY'S FEES BE LESS THAN $3,000.00), AND TO RELEASE ALL PROCEDURAL ERRORS AND WAIVE ALL RIGHTS OF APPEAL. IF THE CONFESSION OF JUDGMENT ABOVE PROVIDED FOR IS AUTHORIZED OR RECOGNIZED BY THE LAW OF THE JURISDICTION CONTROLLING BUT SUCH LAW REQUIRES SPECIAL FORMALITIES AND PROCEDURE, THEN THE SAID ATTORNEY IS EMPOWERED TO EXECUTE THE NECESSARY FORM AND COMPLY WITH SUCH SPECIAL PROCEDURES. THE BORROWER ACKNOWLEDGES AND AGREES THAT JURISDICTION AND VENUE SHALL BE PROPER IN SUCH COURT AND IN ANY OTHER COURT IN THE STATE OF MARYLAND. THE BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE, OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE OF EXEMPTION, HOMESTEAD RIGHTS, STAY OF EXECUTION, OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS THE HOLDER SHALL DEEM NECESSARY OR ADVISABLE, FOR ALL OF WHICH THIS NOTE SHALL BE SUFFICIENT WARRANT. HOLDER ACKNOWLEDGES THAT ATTORNEY FEES ARE STATED TO BE FIFTEEN PERCENT (15%) SOLELY FOR THE PURPOSE OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION, AND HOLDER AGREES THAT IN ENFORCING ANY SUCH JUDGMENT BY CONFESSION, THE HOLDER SHALL NOT DEMAND, SOLELY WITH RESPECT TO ATTORNEY FEES INCURRED BY THE HOLDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT HAS BEEN RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF ATTORNEY FEES CHARGED OR BILLED TO THE HOLDER. THE RIGHT TO CONFESS A JUDGMENT AS AFORESAID SHALL BE IN ADDITION TO, AND NOT TO THE EXCLUSION OF, ALL OTHER RIGHTS OR REMEDIES THAT THE HOLDER MAY HAVE.

9. **Forbearance.** The Lender shall not by any act or omission to act be deemed to waive any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender and then only to the extent specifically set forth therein. A waiver on one occasion shall not be construed as continuing or as a bar to or waiver of such right or remedy on any other occasion. All remedies conferred upon the Lender by this Note or any other instrument or agreement connected herewith or related hereto shall be cumulative and none is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

10. **Modification and Waiver.** Borrower and/or every person at any time liable for the payment of the debt evidenced hereby, waives the exercise of all exemption rights which it holds at law or in equity concerning the debt evidenced by this Note whether under state constitution, homestead laws or otherwise. Borrower and any endorsers or guarantors hereof severally waive valuation and appraisement, presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest or

notice of protest and nonpayment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereof, and trial by jury in any litigation arising out of, relating to, or connected with this Note or any instrument given as security herefore. Additionally, neither the Borrower nor Borrower's affiliates or family members shall have any right of subrogation, reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of the Borrower or to any collateral which secures in whole or in part the indebtedness evidenced by this Note, unless and until all such indebtedness shall have been paid and the obligations hereunder and under the other Security Documents shall have been paid and performed in full, and if any party which constitutes the Borrower shall be deemed an "insider" (as that term is used in the Bankruptcy Code), then all rights of subrogation are waived.

From time to time, without affecting Borrower's obligation to pay any sums due under this Note and perform Borrower's covenants herein, without affecting the obligations of any endorser hereto or guarantor hereof, without giving notice to or obtaining the consent of Borrower or any endorser hereto or guarantor hereof, and without liability on the part of the Holder, Holder may, acting it its sole and absolute discretion, extend the Maturity Date or any other time for payment of interest hereon and/or principal hereof, reduce the payments hereunder, release anyone liable under this Note accept a renewal of this Note, modify the terms and time of payment of this Note, join in any extension or subordination or exercise any option or election hereunder, modify the rate of interest or period of amortization or principal due date of this Note, or exercise any option or election hereunder. No one or more such actions shall constitute a novation.

11. **Voluntary and Involuntary Prepayments.** Any prepayment shall be made under this Note as provided below:

a. Borrower may voluntarily make a full prepayment of this Note on a Business Day ("Full Prepayment"). Such Full Prepayment shall be made by paying (i) the full amount of unpaid principal balance of this Note, (ii) all accrued interest due Lender, (iii) all other fees, costs, expenses or other sums due Lender at the time of such Full Prepayment, and (iv) the prepayment premium calculated pursuant to Section 11(e) of this Note ("Prepayment Premium");

b. Borrower may not voluntarily make less than a Full Prepayment of this Note (a "Partial Prepayment") without prior written approval by Lender. A permitted or approved Partial Prepayment shall neither diminish the amount of the Prepayment Premium or Borrower's obligation to pay same, nor extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing;

c. Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to all other sums due Lender, the Prepayment Premium. Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a Partial Prepayment by Borrower, requiring the payment to Lender of the Prepayment Premium;

d. Borrower recognizes that any Full Prepayment or Partial Prepayment, whether voluntary or involuntary, or whether resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating the Prepayment Premium herein represents a reasonable estimate of the damages Lender will incur because of a prepayment. Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for Lender providing a loan to Borrower, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions;

e. Any Prepayment Premium payable under this Section 11 shall be computed as follows:

i. If the prepayment is made between the date of the initial funding of the loan evidenced by this Note and **August 31, 2023** (the "Prepayment Premium Period"), the Prepayment Premium shall be the interest at the Note rate herein that would be earned on the full Note amount for balance of the Prepayment Premium Period.

ii. If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no Prepayment Premium due.

iii. If the prepayment is made as a result of the application of any insurance proceeds or condemnation award, there shall be no Prepayment Premium due.

12. **Default Rate.** Upon the occurrence of an Event of Default, interest under this Note shall accrue on the unpaid Principal Balance and all accrued interest at a rate (the "Default Rate") equal to the lesser of **11.01** percentage points above the rate stated in the first paragraph of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid Principal Balance and all accrued interest are not paid in full on the Maturity Date, the unpaid Principal Balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the first paragraph of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments. Lender shall impose the Default Rate without any notice requirement to Borrower, guarantor or any third party pledging collateral as security for this Note.

13. **Loan Charges/Maximum Rate Permitted By Law.** Neither this Note nor any of the other Security Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with this Note is interpreted so that any interest or other charge provided for in any Security Document, whether considered separately or together with other charges provided for in any other Security Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note. If Lender reasonably determines that the interest rate (together with all other charges or payments that may be deemed interest) stipulated under this Note is or may be usurious or otherwise limited by law, the unpaid balance of this Note, with accrued interest at the highest rate permitted to be charged by stipulation in writing between Lender and Borrower, at the option of Lender, shall immediately become due and payable.

14. **Waiver of Jury Trial.** THE BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY SECURITY DOCUMENTS OR ANY OTHER ACTIONS, CLAIMS, SUITS OR PROCEEDINGS WITH RESPECT TO OR ARISING FROM THIS NOTE. THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER, AND THE BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THE LOAN AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS NOTE.

15. **Notices/Service of Process.** Any notice or other communication required, permitted or desirable under the terms of this Note shall be sufficiently given if (a) in writing, and (b) sent to each party at the addresses shown at the top of this Note (or in this Paragraph, as applicable).

| | |
|---|---|
| Borrower's Email Address: | prosperitypartnersmd@gmail.com |
| Lender's Email Address: | chris@hardmoneybankers.com |

Further, any notice, demand, consent, approval, request or other communication or document to be given hereunder to a party hereto shall be deemed to have been given (i) on the 3rd business day after being sent as certified or registered mail in the United States mails, postage prepaid, return receipt requested, or (ii) on the next business day after being deposited (with instructions to deliver it on that business day) with a nationally recognized overnight courier service, with all charges prepaid, or (iii) on the same date of delivery on being sent by email to the email address(es) listed below, or (iv) on the same date of delivery on being given by hand (regardless of whether the party's receipt thereof is acknowledged in writing or whether the party refuses delivery) or other actual delivery to the party.

By signature hereon, the Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note and/or under the terms of the Security Documents by (a) mailing a copy thereof by certified mail, postage prepaid, return receipt requested, to them at the address at the top of this Note, and (b) serving a copy thereof upon the agent designated below and appointed by Borrower as Borrower's agent for service of process. Borrower irrevocably agrees that such service shall be deemed in every respect to be effective service of process upon Borrower in any such suit, action or proceeding. Nothing herein, however, shall in any way affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of the Lender otherwise to bring proceedings against the Borrower in a court or courts of appropriate jurisdiction.

| | | |
|---|---|---|
| Borrower's Agent for Service: | MATTIAS CHE BAMA | CELESTIN NYA |
| Address of Agent: | 5368 Dunteachin Drive | 5368 Dunteachin Drive |
| | Ellicott City, MD 21043 | Ellicott City, MD 21043 |

If no address or agent is named above, then Borrower's Agent will be deemed to be the individual executing this Note on behalf of the Borrower and Agent's address will be that listed at the top of this Note.

16. **Entire Agreement/Severability.** The terms and conditions of this Note together with the terms and conditions of the Deed of Trust which are incorporated herein by reference as if set forth fully herein contain the entire understanding between the Borrower and Lender with respect the indebtedness evidenced hereby. Such understanding may not be modified, amended or terminated except in a written document duly executed by Borrower and Lender. In the event that any one or more of the provisions set forth in this Note or any accompanying Arbitration Agreement is determined by law to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired hereby, and each provision in this Note shall be construed liberally in favor of Lender to the fullest extent of the law.

17. **Joint and Several Liability/Credit Reporting.** The liability of the undersigned, as well as any endorsers and/or guarantor(s), shall be both joint and several. This Note shall be binding upon the personal representatives, executors, heirs, successors and assigns of Borrower and Lender. Information concerning this Note may be reported to credit reporting agencies and will be made available when requested by proper legal process.

18. **Governing Law/Consent to Jurisdiction.** BORROWER ACKNOWLEDGES AND AGREES THAT THIS NOTE SHALL BE DEEMED TO BE DELIVERED AND MADE IN THE STATE OF MARYLAND, AND THAT THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE STATE OF MARYLAND NOTWITHSTANDING THE FACT THAT IT MAY HAVE BEEN EXECUTED ELSEWHERE. UNLESS APPLICABLE LAW PROVIDES OTHERWISE, BORROWER IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN THE STATE OF MARYLAND OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING THIS NOTE. THE BORROWER IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT HE/SHE/THEY/IT MAY NOW OR HEREAFTER HAVE TO LAYING THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. FINAL JUDGMENT IN ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON THE BORROWER AND MAY BE ENFORCED IN ANY COURT TO THE JURISDICTION OF WHICH THE BORROWER IS SUBJECT, BY A SUIT UPON SUCH JUDGMENT, PROVIDED THAT SERVICE OF PROCESS IS EFFECTED UPON THE BORROWER IN A MANNER SPECIFIED IN THIS NOTE OR AS OTHERWISE PERMITTED BY APPLICABLE LAW.

19. **Construction.** As used herein, Person means a natural person, trustee, corporation, partnership, limited liability company or other legal entity, and all references made (a) in the neuter, masculine or feminine gender shall be deemed made in all genders, (b) in the singular or plural number shall also be deemed made in the plural or singular number, and (c) to any Section, subsection, paragraph or subparagraph shall, unless therein expressly indicated to the contrary, be deemed made to that part of the Note. The headings of those parts are provided only for convenience of reference, and shall not be considered in construing their contents. Each document referred to herein as being attached hereto as an exhibit or otherwise designated herein as an exhibit hereto shall be a part hereof.

20. **Time of Essence.** Time shall be of the essence of this Note but, other than as to payment of principal and/or interest as required herein, if the last day for Borrower to exercise a right or perform a duty hereunder is not a Business Day, Borrower shall have until the next Business Day to do so. For purposes of this Note, a "Business Day" means any day other than a Saturday, Sunday or Federal statutory holiday.

21. **Assignment.** Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion. Borrower agrees that Lender is entitled to assign some or all of its rights and remedies described in this Note without notice to or the prior consent of Borrower.

22. **Commercial Purpose.** It is expressly stipulated, warranted and agreed that the loan evidenced by this Note (and documents related thereto) is a "commercial loan" under applicable State or Federal law including, but limited to, Section 1603(1) of Title 15 of the United States Code, that the proceeds from the loan evidenced by this Note exceed $15,000.00, and that all proceeds shall be used for business, commercial or investment purposes and expressly not for personal, family or household purposes.

BORROWER ACKNOWLEDGES THAT NONE OF THE BORROWER'S PRINCIPALS, EMPLOYEES, CONTRACTORS OR AGENTS OR THEIR RESPECTIVE FAMILY MEMBERS SHALL RESIDE IN THE PROPERTY USED AS COLLATERAL FOR THIS NOTE AND THAT SUCH PROPERTY SHALL IN NO WAY CONSTITUTE OWNER-OCCUPIED PROPERTY. RATHER, THE PROPERTY CONSTITUTES AN INVESTMENT PROPERTY AND THE LOAN EVIDENCED BY THIS NOTE IS A BUSINESS LOAN AND NOT A CONSUMER LOAN.

23. **Consent To Relief From Automatic Stay.** Borrower hereby agrees that if any of them shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (ii) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended; (iii) file or be the subject of any petition seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) seek, consent to or acquiesce in the appointment of any trustee, receiver, conservator or liquidator; (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against Borrower for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or from any other stay or suspension of remedies imposed in any other manner with respect to the exercise of the rights and remedies otherwise available to Lender under this Note or the Security Documents, or any other documents related to this Note.

24. **Financial Information.** Borrower will at all times keep proper books of record and account in which full, true and correct entries shall be made in accordance with generally accepted accounting principles and will deliver to Lender, within ninety (90) days after written demand by Lender, a copy of Borrower's income tax returns as well as a copy of the annual financial statements of Borrower relating to the most recent fiscal year, such statement to include (i) the balance sheet of Borrower as at the end of such fiscal year (ii) the related income statement, statement of retained earnings and statement of cash flow of Borrower for such fiscal year, prepared by such certified public accountants as may be reasonably satisfactory to Lender. Borrower also agrees to deliver to Lender from time to time, upon written demand by Lender, such other financial information with respect to Borrower as Lender may request.

25. **Loan Fees**. Concurrently with the closing of the loan evidenced by this Note, and from the proceeds thereof, Borrower shall pay to Lender origination, broker, funding, commitment, valuation/appraisal and/or other loan fees, all as set forth on a Settlement Statement executed by Borrower simultaneously herewith. In addition to any other fees due under this Note or paid at closing of this Loan, Borrower agrees to pay to Lender an additional loan fee in the amount of **$0.00** (the "Additional Loan Fee"). All loan fees referenced in this Paragraph are deemed fully earned and non-refundable upon execution of this Note and shall not be credited or offset against principal, interest or any other amounts due hereunder. Although the Additional Loan Fee shall be deemed earned at the time of execution of this Note as all other loan fees, it shall be payable at either a) payoff of the Note; or b) Maturity Date, whichever of these events occur first. If there is an Event of Default, the Additional Loan Fee shall become immediately due and payable without any notice to Borrower and shall be added the principal amount of this Note and shall accrue interest at the Note rate stated herein. By signature hereon, Borrower authorizes Lender to include the Loan Fee in any payoff statements and authorizes any closing agent or attorney or party conducting settlement to send the Loan Fee directly to Lender without any further consent from Borrower

26. **Lender Indemnification**. In consideration of Lender providing a loan and the funds under this Note to Borrower, and notwithstanding any other recourse available to Lender at law or in equity, the Borrower, and their affiliates and their respective employees, officers, directors and shareholders, do hereby agree to defend and save Lender harmless from and against any and all claims, counterclaims, cross-claims, actions, causes of action, suits, proceedings, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature (including reasonable attorneys' fees), whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity, or otherwise, incurred or sustained by Lender, involving, arising out of or relating to this Note, the Security Documents, other documents related to this Note or the loan associated with this Note, the property which is being used as collateral for this Note and/or the transaction contemplated hereby, whether before or after repayment and performance of the indebtedness evidenced by this Note and the obligations of the Borrower under the Security Documents. The obligations of Borrower and the rights of Lender under this Note shall survive payment of said indebtedness and performance of said obligations and shall remain in full force and effect without termination.

(SIGNATURES APPEAR ON FOLLOWING PAGE)

THE PERSONS SIGNING BELOW ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN AMPLE OPPORTUNITY TO READ THIS AGREEMENT AND SEEK INDEPENDENT LEGAL COUNSEL AND ACKNOWLEDGE THEY HAVE COMPLETELY READ AND UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS OF THIS NOTE AND VOLUNTARILY GRANT TO LENDER ALL RIGHTS SET FORTH HEREIN AND FURTHER ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS NOTE.

Borrower:
PROSPERITY PARTNERS, INC.:
By:

_____(SEAL)      Date: __5/22/2023__
MATTIAS CHE BAMA
Authorized Signatory


STATE OF __Maryland__, COUNTY OF __Prince Georges__: ss:

Sworn to and subscribed before me this __22nd__ day of May, 2023.

OYETOYIN TANI-OLUGBEMI
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES 02/13/2025

_____
Notary Public

My Commission Expires: _____