Entered: April 6th, 2026
Signed: April 6th, 2026



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

In re:

PROSPERITY PARTNERS INC.,

Debtor.

Case Number:  23-17059-MCR
(Chapter 7)

**MEMORANDUM OPINION IN SUPPORT**
**OF ORDERS DENYING MOTIONS TO DISMISS**

On October 1, 2025, Roger Schlossberg, the Chapter 7 trustee (the "Trustee") for

Prosperity Partners Inc. (the "Debtor"), filed 78 complaints seeking the avoidance and recovery

of fraudulent transfers in the Debtor's bankruptcy case.  Each complaint is titled *Trustee's*

*Complaint for Avoidance and Recovery of Fraudulent Transfers* (individually, the "Complaint"

and, together, the "Complaints"), and the filing thereof resulted in the commencement of 78

separate adversary proceedings (individually, the "Adversary Proceeding" and, together, the

"Adversary Proceedings").  In 21 of the adversary proceedings,[1] the named defendants filed a

---

[1] Eight of the Motions to Dismiss were filed by attorney Gertrude Ngamga Kamtchoum.  *See* Adv. Proc. Nos. 25-00312-MCR, 25-00317-MCR, 25-00325-MCR, 25-00332-MCR, 25-00338-MCR, 25-00340-MCR, 25-00354-MCR, and 25-00360-MCR (together, the "Kamtchoum Motions to Dismiss").  Eleven of the Motions to Dismiss were filed by The Iweanoges' Firm, PC.  *See* Adv. Proc. Nos. 25-00293-MCR, 25-00294-MCR, 25-00296-MCR, 25-00300-MCR, 25-00303-MCR, 25-00304-MCR, 25-00306-MCR, 25-00311-MCR, 25-00329-MCR, 25-00350-MCR, and 25-00351-MCR (together, the "Iweanoges Motions to Dismiss").  Two of the Motions to Dismiss were filed by defendants who are proceeding *pro se* in their respective adversary

motion to dismiss the Complaint (individually, the "<u>Motion to Dismiss</u>" and, together, the "<u>Motions to Dismiss</u>").  The Trustee filed an opposition to each Motion to Dismiss.

The Complaints in the Adversary Proceedings are nearly identical aside from the amounts allegedly invested in the Debtor by the defendants and the amounts allegedly owed to the defendants by the Debtor as asserted in the proofs of claim filed by the defendants in the Debtor's bankruptcy case.  Moreover, the Motions to Dismiss present similar arguments as do the oppositions filed by the Trustee.  As such, the Court is issuing a single Memorandum Opinion addressing all of the Motions to Dismiss with any notable differences discussed herein.[2]  For the following reasons, the Motions to Dismiss are denied.[3]

I.      **<u>The Complaints</u>**

The Complaints allege that the defendants participated in what is best described as a "Ponzi Scheme" purportedly carried out by the Debtor by investing various sums of money in the Ponzi Scheme.  The Complaints assert that a reasonable person in similar circumstances as the defendants would not have believed or otherwise relied in good faith on the Debtor's representations concerning its investment program.  The Complaints point to the unreasonably high returns promised by the Debtor, the lack of commercially reasonable evidence supporting the Debtor's business operations, the lack of reasonable due diligence by the defendants, the commercially unreasonable proportion of payments and/or interest promised to be distributed by the Debtor, and to the extent that any funds were transferred back to the defendants from

---

proceedings.  *See* Adv. Proc. Nos. 25-00302-MCR and 25-00339-MCR (together, the "<u>Pro Se Motions to Dismiss</u>").

[2] The Court finds that a hearing would not aid the decisional process and issues this Memorandum Opinion based on the arguments and legal authority set forth in the Complaints, the Motions to Dismiss, and the Trustee's oppositions thereto.  *See* Md. L. Bankr. R. 9013-1(b).

[3] Separate orders will be entered in the 21 Adversary Proceedings consistent with this Memorandum Opinion.

the Debtor based on the defendants' initial investment, the lack of any meaningful return to the Debtor for such transfers.  The Complaints assert that, in furtherance of the Ponzi Scheme, the Debtor made transfers of funds from its bank account to the direct benefit of the defendants. The transfers (the "Transfers") are identified on Exhibit A attached to each of the Complaints. The Trustee avers that the Debtor was insolvent at all relevant times as a result of operating the Ponzi Scheme.  Lastly, the Complaints assert that the defendants acted as solicitors, seeking to bring new investment into the Debtor.

Count I of the Complaints seeks the avoidance and recovery of a portion of the Transfers as actually fraudulent under Sections 548 and 550 of the United States Bankruptcy Code (the "Bankruptcy Code").  Count I asserts that some of the Transfers were made within two years of the Debtor's petition date on October 2, 2023 (the "Petition Date"); the defendants are the initial transferee of the Transfers; the Transfers constituted a transfer of an interest in property of the Debtor; the Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors; and the Debtor and its creditors were harmed as a result of the Transfers.  The Trustee explains that payments made in furtherance of the Ponzi Scheme are presumed to be fraudulent and further asserts that fraudulent intent can be inferred from, among other things, the traditional badges of fraud surrounding the Transfers: (i) the Debtor conducted little or no legitimate business activities; (ii) the defendants and the Debtor's principal (Mathias Bama), or other insiders of the Debtor, were closely associated; (iii) the Debtor made the Transfers to the defendants knowing that it had incurred debts it could not satisfy and that it would be unable to satisfy the claims of other investors; and (iv) circumstances surrounding the general chronology of the Debtor's investment program and the defendants' participation demonstrate the Debtor's fraudulent intent.  For all of these reasons, Count I requests that

judgment be entered in favor of the Trustee and against the defendants in the amount of the

Transfers made within two years of the Petition Date, plus interest and costs.

Count II of the Complaints seeks the avoidance and recovery of the Transfers as

constructively fraudulent under Sections 548 and 550 of the Bankruptcy Code.   Count II

asserts:

> The Debtor, by making the Transfers to the Defendant, did not receive reasonably equivalent value or fair consideration for the Transfers.   The Transfers were made to the Defendant using funds deposited in the Debtor by other investors or the Debtor's other creditors.   Upon receipt of the Transfers, the Defendant conspicuously accepted, notwithstanding that the Defendant knew or had reason to know of the fraudulent nature of the Defendant's scheme.
>
> To the extent that the Defendant received any profits or returns on its investment in the Debtor's fictitious program above the amount the Defendant directly contributed, such alleged profits or returns were not obtained from legitimate business operations and were fictitious.
>
> When the Debtor made the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers; was engaged in business or transactions or were about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts.

Complaint ¶¶ 31-33.  Count II seeks judgment in favor of the Trustee and against the defendants

in the same amounts as requested in Count I.

Count III of the Complaints seeks the avoidance and recovery of the Transfers as

actually fraudulent under Sections 544(b) and 550 of the Bankruptcy Code and applicable state

law.  Count III asserts that the Transfers were made within three years of the Petition Date and

that, pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an

existing unsecured creditor and can assert claims and causes of action that such a creditor could

assert under applicable state law. As with Count I, Count III alleges that the Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors. Count III requests that judgment be entered in favor of the Trustee and against each defendant in the total amount of the Transfers set forth in Exhibit A attached to each Complaint, plus interest and costs.

Count IV of the Complaint seeks the avoidance and recovery of the Transfers as constructively fraudulent under Sections 544(b) and 550 of the Bankruptcy Code and applicable state law. Count IV presents the same allegations as Count II but seeks judgment in favor of the Trustee and against each defendant in the total amount of the Transfers set forth in Exhibit A attached to each Complaint, plus interest and costs.

Lastly, Count V seeks the disallowance of the defendants' claims against the bankruptcy estate pursuant to Section 502(d) of the Bankruptcy Code until the Transfers are returned by the defendants. Count V states that, to the extent any proof of claim filed by a defendant is in an amount greater than the principal amount actually invested by the defendant in the Debtor, such proof of claim must be disallowed in part pursuant to Section 502(b).

## II.   The Motions to Dismiss

### A.   The Kamtchoum Motions to Dismiss and the Trustee's Related Oppositions

The Kamtchoum Motions to Dismiss seek dismissal of the Complaint for failure to state a valid claim under Sections 544, 548, 550, 502(b), and 502(d) of the Bankruptcy Code and for being time-barred under Section 546(a) of the Bankruptcy Code. The Court notes that one of the Kamtchoum Motions to Dismiss also requests authorization to file the Motion to Dismiss out of time. *See* Adv. Proc. No. 25-00312, Dkt. No. 6. To the extent any of the Motions to Dismiss were filed late, the Court will accept them as timely filed. There is no evidence that

any delay was caused by the bad faith of the defendants and/or their counsel, and any delay was minimal and caused no prejudice to the Trustee. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993) ("[T]he lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim.").

As for the substance of the Kamtchoum Motions to Dismiss, some of the Transfers and the proofs of claim referenced therein are inconsistent with the Complaints and/or the proofs of claim filed by the defendants. For instance, in Adversary Proceeding 25-00312, the Motion to Dismiss states:

> The Trustee alleges that Defendant invested at least $45,000.00 with the Debtor with the Debtor [sic] and filed Proof of Claim No. 331 for $66,600.00. (see Exhibit B, Proof of Claim). The Defendant, however, maintains that she invested at least $135,000.00 pursuant to the investment agreement. (see Exhibit A, Summary of the Investment)[.]

Adv. Proc. No. 25-00312, Dkt. No. 6, p. 8. This is not what is alleged in the Complaint, and there is no Proof of Claim attached to the Motion to Dismiss. Further, in reviewing the Claims Register in the Debtor's bankruptcy case, Claim No. 331 was filed by an individual named Liliane Moche, not the defendant named in Adv. Proc. No. 25-00312. Despite these inaccuracies, the legal arguments presented in the Motion to Dismiss seemingly relate to the Complaint and will be addressed by the Court.

The first argument presented in the Kamtchoum Motions to Dismiss is that the Complaint relies on conclusory statements without detailed factual allegations as required by Rule 9(b), which requires that, where a complaint alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The second argument presented is that "payments up to the amount of investor principal are deemed reasonably equivalent value; the defendants received less than the principal, defeating any constructive transfer claim." On its face, this assertion fails with respect to those Complaints that allege that the transfers received by the defendants from the Debtor exceeded the defendants' investment in the Debtor.

The third argument presented is that the defendants' good faith bars recovery under Sections 548 and 550(b) of the Bankruptcy Code. Specifically, the defendants assert that the Trustee has not alleged any facts showing that the defendants were aware of any fraud or the voidability of the Transfers, and the Complaints rely on conclusory statements that the Debtor received less than reasonably equivalent value in exchange for the Transfers without supporting detail. As such, the defendants argue that the Transfers are not avoidable under Section 548(a) and are excepted from recovery pursuant to Section 550(b).

The defendants' remaining arguments are: (i) the Trustee's characterization of the defendants as "solicitor[s]" is unsupported by any factual allegations; (ii) the Trustee's claims are time barred under Section 546(a) of the Bankruptcy Code because the Complaints do not specify when the Debtor filed for bankruptcy or the date of the Trustee's appointment; (iii) the Complaints fail to state a claim for disallowance under Section 502 of the Bankruptcy Code because they fail to allege specific facts demonstrating that the defendants' claims fall within any of the enumerated grounds for disallowance under Section 502(b) and the Complaints fail to state a claim for avoidance; (iv) the amounts of the Transfers are inconsistent with the defendants' records; and (iv) in one instance, that the defendant was an innocent investor in that her mother, with whom the defendant had a joint bank account, invested funds from the

joint account in the Debtor while the defendant was serving overseas (*see* Adv. Proc. No. 25-00317, Dkt. No. 6).

The Kamtchoum Motions to Dismiss attach various exhibits thereto including proofs of claim, purported investment agreements and addenda, earning statements, bank account information, tax records, copies of checks, and in one instance, a "victim impact" statement.

Preliminarily, the Trustee argues that some of the Kamtchoum Motions to Dismiss were untimely filed. Although correct in some instances, the Court is unwilling to deny any of the Kamtchoum Motions to Dismiss based on untimeliness. As stated above, there is no evidence that any delay was caused by bad faith or that the delay was prejudicial to the Trustee. Substantively, the Trustee argues that the Kamtchoum Motions to Dismiss fail to set forth any valid grounds to dismiss any of the counts presented in the Complaints. The Trustee states that the Kamtchoum Motions to Dismiss wholly ignore the applicability of the "Ponzi Scheme" presumption and prematurely assert a good faith affirmative defense before discovery has begun. The Trustee further asserts that, other than the proofs of claim filed by the defendants, the extrinsic evidence presented in the Kamtchoum Motions to Dismiss should be disregarded because any such evidence falls outside the four corners of the Complaint, is not integral to the Complaint, and is not properly part of the Court's consideration of the Kamtchoum Motions to Dismiss. The Trustee maintains that the actual fraudulent transfer claims are plead with sufficient particularity to survive dismissal even to the extent the heightened standard under Rule 9(b) applies, the asserted claims are not time-barred, and the Trustee has sufficiently stated claims for the disallowance of the defendants' claims against the Debtor's estate.

**B.      The Iweanoges Motions to Dismiss and the Trustee's Related Oppositions**

The Iweanoges Motions to Dismiss argue that the intentional fraudulent conveyance claim alleged in Count I of the Complaints should be dismissed because the defendants provided reasonably equivalent value in good faith to the Debtor.  The Iweanoges Motions to Dismiss assert that the alleged Ponzi Scheme is speculative at best and the facts supporting the alleged scheme are conclusory.  Accordingly, the Iweanoges Motions to Dismiss argue that the Ponzi scheme presumption does not apply to the Complaints and that the Complaints cannot support an inference the defendants had actual or even constructive knowledge of the Debtor's alleged fraud necessary to establish that they did not act in good faith.  Similarly, the Iweanoges Motions to Dismiss argue that the constructive fraud claim in Count II of the Complaints fails because the Trustee has not satisfied the fourth element to prove constructive fraud – that the Debtor received less than reasonably equivalent value in exchange for the Transfers.  The Iweanoges Motions to Dismiss state that the Complaints are not specific as to the defendants' investments and that, without establishing a sum certain, the Trustee is unable to satisfy this element.  As for Counts III and IV, the Iweanoges Motions to Dismiss argue that the Complaints fail to allege any applicable state law on which the Trustee relies and, therefore, Counts III and IV should be dismissed.  Lastly, the Iweanoges Motions to Dismiss argue that Count V of the Complaint is contingent on the Trustee prevailing on Counts I through IV, and because Counts I through IV should be dismissed, Count V must also be dismissed.

The Trustee's oppositions to the Iweanoges Motions to Dismiss are similar to his oppositions to the Kamtchoum Motions to Dismiss.  The Trustee argues that the Ponzi scheme presumption applies and is sufficient to establish the Debtor's actual intent to hinder, delay, or defraud creditors so as to permit avoidance of the Transfers as a fraudulent transfer under

Section 548(a)(1)(A).  The Trustee asserts that the Iweanoges Motions to Dismiss misstate the law by arguing that the Ponzi Scheme presumption only applies if a Ponzi scheme has been proven and the main parties have been criminally charged.  The Trustee argues that the Ponzi scheme presumption contains no such requirement and adds that Mr. Bama, along with other insiders of the Debtor, entered into a Consent Order with the Maryland Securities Commissioner, which included detailed findings related to the perpetration of the Debtor's scheme, including that payments were made to investors in "the way payments to investors are made in a Ponzi scheme."  Adv. Proc. No. 25-00293, Dkt. No. 16, p. 9.  The Trustee attached a copy of the Consent Order with the Maryland Securities Commissioner as Exhibit 1 to his oppositions to the Iweanoges Motions to Dismiss.

The Trustee's other arguments are: (i) the defendants' asserted good faith defense is wholly inapplicable at this stage of the Adversary Proceeding; (ii) even though the Trustee does not have the burden of pleading (or the ultimate burden of proof) as to the defendants' good faith defense, the well-pleaded allegations in the Complaints dispute or rebut any factual basis for a good faith defense by the defendants; (iii) the Complaints state plausible claims for constructive fraudulent transfers; (iv) as to any "net winners" (*i.e.*, investors whose payments from the Debtor exceeded their investment in the Debtor), any good faith defense does not extend to and cannot protect payments in excess of the amount invested by the defendants; (v) the Trustee is not required to plead applicable state law for claims under Section 544 and the claims under Section 544 are pleaded with sufficient particularity; and (vi) the claims under Section 502 should not be dismissed because the Complaints state plausible avoidance claims.

C.     **The Pro Se Motions to Dismiss and the Trustee's Related Oppositions**

One of the two Pro Se Motions to Dismiss asserts that the named defendant, Mathias Takam, "was not the investor, did not own the funds, did not benefit from the transfers, and acted solely as Power of Attorney and a mere conduit for the true investor, Naoussi Takam Fabrice Romeo." Adv. Proc. No. 25-00302, Dkt. No. 11. Mr. Takam explains that the actual investor (Mr. Romeo) resides outside of the United States and that the defendant acted solely under a power of attorney for Mr. Romeo due to international banking limitations. Mr. Takam maintains that any payments that he received were forwarded to Mr. Romeo and were not for the benefit of the defendant. Mr. Takam asserts that under established bankruptcy law, "a mere conduit is not an initial transferee and cannot be held liable under 11 U.S.C. §§ 548 or 550." *Id.* Lastly, Mr. Takam maintains that the Trustee has sued the wrong party and asserts that he acted in good faith and without any knowledge of any alleged wrongdoing. Mr. Takam attaches several exhibits to the Motion to Dismiss, including an affidavit of Mr. Romeo in which he explains that Mr. Takam is his father.

In opposing Mr. Takam's Motion to Dismiss, the Trustee asserts that the defendant's assertions implicate a good faith affirmative defense and rest on documents and facts outside the four corners of the Complaint. The Trustee further points out that Mr. Takam filed a proof of claim in the Debtor's case, which he signed as the creditor and not the creditor's agent, and that he also signed the investor agreements with the Debtor as the Agreement Holder. The Trustee states that Mr. Takam does not deny that the Transfers were made and states that, to the extent Mr. Romeo is a subsequent transferee under Section 550, the Trustee will file a cause of action to recover the funds if he deems it appropriate. The remainder of the Trustee's

opposition mirrors the arguments made in his oppositions to the Kamtchoum and Iweanoges Motions to Dismiss.

The other Pro Se Motion to Dismiss was filed by Wily Armand Tague Takougang and consists of a one-page form used in Maryland state courts that simply alleges that the Complaint should be dismissed for "pleading deficiencies, failure to state a claim because I am a victim that Prosperity scammed as well as missing supporting evidence from the Plaintiff." Adv. Proc. No. 25-00339, Dkt. No. 16.

In opposing Mr. Takougang's Motion to Dismiss, the Trustee states that the motion asserts no valid grounds to dismiss any of the counts in the Complaint. The Trustee then reasserts the arguments made in his other oppositions.

## III.   Relevant Statutes

The Bankruptcy Code provisions applicable to the Court's analysis are Sections 548, 544, 550, and 502. Section 548 of the Bankruptcy Code provides, in relevant part:

> (a)(1) The trustee may avoid any transfer ... of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
>> (A) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>
>>>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction,

for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548.

Section 544(b)(1) provides: "Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

Section 550(a) provides, in relevant part:

[T]o the extent that a transfer is avoided under section 544 [or] … 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

11 U.S.C. § 550.

Lastly, Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

IV.     **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary

proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides as follows:

> Every defense to a claim for relief in any pleading must be
> asserted in the responsive pleading if one is required. But a party
> may assert the following defenses by motion ... failure to state a
> claim upon which relief can be granted ...

Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992).  A motion to dismiss under Rule 12(b)(6) will be granted if the allegations of the

complaint, construed in the light most favorable to the plaintiff, fail as a matter of law to state

a claim for which relief can be granted.  *F.T.C. v. AmeriDebt, Inc.*, 343 F.Supp.2d 451, 459 (D.

Md. 2004) (citing *Carter v. Burch*, 34 F.3d 257, 261 (4th Cir.1994)).  The Court must accept

as true all well-pleaded material allegations of the complaint and must liberally construe it as

a whole.  *AmeriDebt,* 343 F.Supp.2d at 459 (citing *Edwards v. Johnston Cty. Health Dep't*,

885 F.2d 1215, 1217 n.4 (4th Cir.1989)); *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).  A

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.  *Id.* (citations omitted).  *AmeriDebt*, 343 F.Supp.2d at 459; *Jenkins*, 395 U.S. at 422.

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A

complaint is plausible when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Plausibility does not require probability but does require something more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## V.   Analysis

The Court has reviewed the Complaints, the Motions to Dismiss, and the oppositions and finds that the Complaints contain sufficient factual matter to survive dismissal. The allegations contained therein, which the Court accepts as true, state claims for relief that are plausible on their face. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). At this stage in the proceedings, the Trustee is entitled to the Ponzi scheme presumption, which has been explained in the following way:

> Once a fraudulent scheme is shown to be a Ponzi scheme, a presumption arises that all of the transactions that are a part of the Ponzi scheme were made with the intention to hinder, delay, or defraud creditors, a critical element of a fraudulent conveyance. The Ponzi scheme presumption relieves the trustee of the burden of proving that each transaction was made with the intention to hinder, delay, or defraud creditors. A party seeking to raise a presumption has the burden of proving the predicate facts that give rise to the presumption. In this case, the burden is on the trustee to prove the predicate facts: that a Ponzi scheme existed and that the transactions were a part of the Ponzi scheme. If the trustee cannot carry his burden of proof, the presumption will not arise. *In re Whitley*, 463 B.R. 775, 781–83 (Bankr. M.D.N.C. 2012); *In re Pearlman*, 440 B.R. 569, 575 (Bankr.

M.D. Fla. 2010); *Wing v. Williams*, 2011 WL 891121, *4 (Bankr. D. Utah 2011).

*In re Taneja*, No. 08-13293-RGM, 2012 WL 3073175, at *4 (Bankr. E.D. Va. July 30, 2012), *aff'd,* 743 F.3d 423 (4th Cir. 2014). This Court has previously applied this presumption to transfers made pursuant to a Ponzi scheme. *See Milligan v. May*, No. CV 23-2691-BAH, 2024 WL 4336564, at *9 (D. Md. Sept. 26, 2024) ("[C]ourts have routinely held that a transfer made pursuant to a Ponzi scheme's operation was made with fraudulent intent.") (citing *In re Whitley*, 463 B.R. 775, 781 (Bankr. M.D.N.C. 2012)).

Here, the Trustee will have to establish the existence of a Ponzi scheme, but for purposes of the Motions to Dismiss, the Court must accept as true that the scheme existed, the defendants made the alleged investments therein, the defendants received the Transfers from the Debtor in return, and the Transfers were made with the requisite fraudulent intent because these alleged facts are well-pleaded in the Complaints. As the Trustee points out, the defendants' assertions of good faith are not a basis to dismiss the Complaints and, instead, are a defense to the allegations to be proven at trial. Moreover, the Complaints satisfy the heightened pleading requirement of Rule 9(b), which requires that averments of fraud "state with particularity the circumstances constituting fraud or mistake" whereas "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To establish the required particularity, "the Complaint must allege (1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto." *Whitley*, 463 B.R. at 784. The Complaints meet this standard.

Similarly, the defendants did not establish that the Complaints fail to state a claim for constructively fraudulent transfers in Counts II and IV. "In order to avoid a transfer under

these sections, a trustee must establish that (1) the debtor had an interest in the property transferred; (2) the interest was transferred within two years of the filing of the bankruptcy petition (or within [the time set forth in applicable state law])[4]; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than a reasonably equivalent value in exchange for such transfer." *Whitley*, 463 B.R. at 784. Here, the Complaints easily satisfy the first and second elements.

As for the third element, insolvency, the Complaints assert that the Debtor was insolvent at all relevant times thereto, including at the time of the Transfers. "Plaintiff's allegation, although technically 'a formulaic recitation of the elements of a cause of action,', is nevertheless sufficient: by definition, Ponzi-style investment schemes are insolvent. Returns paid to investors are comprised of nothing more than the principal investments made by other investors." *Whitley*, 463 B.R. at 784 (internal citation omitted).

With respect to the fourth element, "[r]easonably equivalent value is a question of fact as to which the court is to be given considerable latitude to make a determination by considering all the facts and circumstances surrounding the transaction in question." *Id.* at 785 (citing *In re Summit Place, LLC*, 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002)). "In the case of Ponzi schemes, the general rule is that a defrauded investor gives 'value' to Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal." *Id.* Here, the Trustee argues that the claim a Ponzi investor holds is akin to a restitution claim, such that if the defendants knew or should have known about the fraudulent scheme, then there is no offset for value and thus no reasonably equivalent value. The Trustee cites *In re Lake States Commodities, Inc.*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000), which

---

[4] The time period is three years under Maryland law.  Md. Code. Ann., Cts. & Jud. Proc. § 5-101.

held that "an investor having actual knowledge of the underlying fraud may not have a claim for restitution, and will not be deemed to have given reasonably equivalent value in exchange for payments from a Ponzi scheme." The Court is not making a determination at this time as to whether the general rule espoused in *Whitley* applies to the facts here or whether the Trustee's restitution theory (*i.e.*, that there is no offset for value provided where there is actual knowledge of the underlying fraud) governs. Either way, the Complaints state a claim that is plausible on its face that at least some portion of the Transfers were not for value and may therefore be subject to recovery by the Trustee.

The defendants' remaining arguments also fail to establish a basis for dismissal. The Trustee's characterization of the defendants as "solicitor[s]" is not germane to the Complaints. The Trustee's claims are not time barred, and in fact, contrary to the assertions in the Kamtchoum Motions to Dismiss, the Complaints set forth the date that the Debtor filed its voluntary petition (October 2, 2023) while the Complaints were filed on October 1, 2025 – less than two years after the Petition Date. Thus, the Complaints were filed within the two-year period set forth in Section 546(a) of the Bankruptcy Code. Lastly, because the Court has determined that the Complaints set forth plausible causes of actions under Sections 544 and 548, the Complaints states a claim for disallowance of the defendants' claims against the bankruptcy estate under Section 502.

## VI.    Conclusion

For all of these reasons, the Motions to Dismiss will be denied, the Court will enter an order consistent with this Memorandum Opinion in each of the 21 Adversary Proceedings, and the Court will enter scheduling orders setting forth applicable deadlines and hearing dates.

cc:    All Parties in Adversary Proceedings 25-00293, 25-00294, 25-00296, 25-00300, 25-00302, 25-00303, 25-00304, 25-00306, 25-00311, 25-00312, 25-00317, 25-00325, 25-00329, 25-00332, 25-00338, 25-00339, 25-00340, 25-00350, 25-00351, 25-00354, and 25-00360

        All Counsel in Adversary Proceedings 25-00293, 25-00294, 25-00296, 25-00300, 25-00302, 25-00303, 25-00304, 25-00306, 25-00311, 25-00312, 25-00317, 25-00325, 25-00329, 25-00332, 25-00338, 25-00339, 25-00340, 25-00350, 25-00351, 25-00354, and 25-00360

## END OF MEMORANDUM